# EXHIBIT "3"

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
                   MARSHALL DIVISION

LELAND TAYLOR AND        )
KAREN TAYLOR             )
                         )
                         )     CIVIL ACTION NO.
VS.                      )     2:08-cv-268(TJW)
                         )
NADEL AND GUSSMAN, LLC   )     JURY
```

ORAL AND VIDEOTAPED DEPOSITION OF

JOSEPH G. ANDERSON

APRIL 1, 2009

ORAL AND VIDEOTAPED DEPOSITION OF JOSEPH G. ANDERSON, produced as a witness at the instance of the Plaintiffs, and duly sworn, was taken in the above-styled and numbered cause on the 1st day of April, 2009, from 9:58 a.m. to 3:55 a.m., before Lisa Dowdy, CSR in and for the State of Texas, reported by machine method, at the offices of Provost Umphrey Law Firm, LLP, 112 East Line Street, Suite 304, Tyler, Texas 75702, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
 2                   MARSHALL DIVISION

 3   LELAND TAYLOR AND        )
     KAREN TAYLOR             )
 4                            )   CIVIL ACTION NO.
     VS.                      )   2:08-cv-268(TJW)
 5                            )
     NADEL AND GUSSMAN, LLC   )   JURY
 6
```

REPORTER'S CERTIFICATION

DEPOSITION OF JOSEPH G. ANDERSON

APRIL 1, 2009

I, Lisa Dowdy, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JOSEPH G. ANDERSON, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on the 14th day of April, 2009, to Mr. Christopher J. Simmons for examination, signature, and return to

DEPOSITION OF JOE ANDERSON     APRIL 1, 2009

1  me within 30 days of the date of receipt;
2      That the amount of time used by each party at
3  the deposition is as follows:
4      Mr. Tindel:  4 hours;
5      That pursuant to information given to the
6  deposition officer at the time said testimony was
7  taken, the following includes counsel for all
8  parties of record:
9      Mr. Andy Tindel, Provost Umphrey Law Firm, LLP,
10 112 East Line Street, Suite 304, Tyler, Texas 75702,
11 Attorney for the Plaintiffs Leland Taylor and Karen
12 Taylor;
13     Mr. Christopher J. Simmons, Thompson, Coe,
14 Cousins & Irons, LLP, Plaza of the Americas North
15 Tower, 700 North Plaza Street, 25th Floor, Dallas,
16 Texas 75201, Attorney for the Defendant Nadel and
17 Gussman, LLC;
18     Ms. Laura D. Schmidt, Downs Stanford, PC, 2001
19 Bryan Street, Suite 4000, Dallas, Texas 75201,
20 Attorney for the Intervenor New Hampshire Insurance
21 Company;
22     I further certify that I am neither counsel for,
23 related to, nor employed by any of the parties or
24 attorneys in the action in which this proceeding was
25 taken, and further that I am not financially or

1   otherwise interested in the outcome of the action.
2       Certified to by me this 14th day of April,
3   2009.
4
5
6   _____
    LISA DOWDY, CSR
7   STATE OF TEXAS NO. 4333
    EXPIRES DECEMBER 31, 2010
8
    CARRIFEE REPORTING
9   FIRM REGISTRATION NO. 331
    1828 ESE LOOP 323, SUITE 310
10  TYLER, TEXAS  75701
    (903) 596-7714 OFFICE
11  (903) 596-7749 FAX
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEPOSITION OF JOE ANDERSON    APRIL 1, 2009

Page 2

```
 1            APPEARANCES
 2  FOR THE PLAINTIFFS LELAND TAYLOR AND KAREN TAYLOR:
       Mr. Andy Tindel
 3     Provost Umphrey Law Firm, LLP
       112 East Line Street, Suite 304
 4     Tyler, Texas 75702
 5  FOR THE DEFENDANT NADEL AND GUSSMAN, LLC:
       Mr. Christopher J. Simmons
 6     Thompson, Coe, Cousins & Irons, LLP
       Plaza of the Americas North Tower
 7     700 North Plaza Street, 25th Floor,
       Dallas, Texas 75201
 8
    FOR THE INTERVENOR NEW HAMPSHIRE INSURANCE COMPANY:
 9     Ms. Laura D. Schmidt
       Downs Stanford, PC
10     2001 Bryan Street, Suite 4000
       Dallas, Texas 75201
11
    ALSO PRESENT:
12     Mr. Leland Taylor
       Mrs. Karen Taylor
13     Ms. Betty Ellsworth, Videographer
       Ms. Ann Chennault, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1              I N D E X
 2          JOSEPH G. ANDERSON
 3                            PAGE
 4  Examination by Mr. Tindel       5
 5  Signature and Changes         234
 6  Reporter's Certificate        235
 7
 8            E X H I B I T S
 9  NO.   DESCRIPTION             PAGE
10  P-1   Industrial Accident Investigation - 172
          Witness Statement
11
    P-2   Industrial Accident Investigation  181
12        Report
13  P-3   Preliminary Report of Findings by   194
          John F. Lacy, P.E.
14
    P-4   Report from John R. Sexton, P.E.,   199
15        C.S.P.
16  P-5   Defendants' Motion for Leave to     200
          Designate Responsible Third Party
17
    P-6   Four Photographs                    202
18
19
20
21
22
23
24
25
```

Page 4

```
 1            AGREEMENTS
 2     IT IS HEREBY AGREED by and between the parties
 3  hereto, through their attorneys appearing herein,
 4  that any and all objections to any question or
 5  answer herein, except as to the form of the question
 6  or unresponsive answers, may be made upon the
 7  offering of this cause with the same force and
 8  effect as though the witness were present in person
 9  and testifying from the witness stand.
10     IT IS FURTHER AGREED by and between the parties
11  hereto, through their attorneys appearing herein,
12  that this deposition may be signed before any Notary
13  Public.
14     IT IS FURTHER AGREED by and between the parties
15  hereto, through their attorneys appearing herein,
16  that if this deposition is not signed and filed
17  prior to any hearing in this cause that an unsigned
18  certified copy may be used for all purposes as
19  though signed by the said witness.
20
21
22
23
24
25
```

Page 5

```
 1           PROCEEDINGS
 2          (Attorneys waived formal
 3          reading of federal caption.)
 4          THE VIDEOGRAPHER:  Good morning.
 5  Today is April 1st, 2009.  This is the oral and
 6  videotaped deposition of Joe Anderson.  The time is
 7  approximately 9:58 a.m.  We are now on the record.
 8  Will the court reporter please swear in the witness.
 9          JOSEPH G. ANDERSON,
10  having been first duly sworn, testified as follows:
11             EXAMINATION
12  BY MR. TINDEL:
13     Q.  Mr. Anderson, my name is Andy Tindel.  I'm
14  a lawyer here in Tyler, and I'm representing Leland
15  Taylor and Karen Taylor in a lawsuit filed in
16  federal court against Nadel and Gussman.  We've not
17  met before just a few minutes before the deposition
18  started, correct?
19     A.  Yes.
20     Q.  Have you ever had your deposition taken
21  before --
22     A.  No.
23     Q.  -- like we're doing here today?
24     A.  No.
25     Q.  Okay.  Let me go over a couple of things
```

Page 118

1   Q. Use your hands like this. About how big
2   would it would be?
3   A. About like that, I guess (indicating).
4   It's 4 inches diameter by -- I would have to
5   measure -- 2 feet long. You know, it's got slits to
6   where it sets and it won't move, you know, up or
7   down.
8   Q. Okay. So the first frac job is completed
9   by Halliburton and then Mr. Taylor comes in. Is he
10  there at your request to do the first flow back?
11  A. Yes, he did, and he called -- David Boone
12  called me and asked -- told me that Leland had, you
13  know, gotten let go by Baker and wanted to know if I
14  would put him back to work, and I said definitely.
15      You know, Leland had done a lot of work for
16  me, you know, in the past before he went to work
17  for -- had a better, you know, job opportunity with
18  Baker.
19      I mean, I think we even talked about
20  insurance. I'm sure David is just an independent
21  contractor. I mean, at the time Leland was doing
22  a lot of work for me we worked for David -- I would
23  have to go back through the dates -- in the late
24  '90s, early 2000's, and then Leland went to work for
25  Baker.

Page 119

1       And then, like I say, David called me, you
2   know, the latter part of July, you know, and said
3   that Leland had gotten let go by Baker and wanted to
4   know if I would use him again and told me the
5   situation. I said, yeah, I don't have a problem. I
6   have a no gun policy, too, but, you know, it's not,
7   you know, an issue that's going to, you know, create
8   any havoc me not using Leland again, I'll put it
9   that way, and I -- he had always done a -- you know,
10  take charge, you know, type guy that handled the job
11  professionally, and, you know, you just never really
12  worry when Leland was out there.
13  Q. Okay. On the -- so was the Trawick No. 3
14  first flow-back -- the first flow-back job that
15  Leland had worked as the flow-back hand for Nadel
16  and Gussman after he left Baker Hughes?
17  A. Yeah. I mean, I guess the way I understand
18  it, it's the first job he did --
19  Q. Period?
20  A. -- period, after he -- I mean, I don't know
21  that. I mean, I would have to -- I mean, like I
22  know David called me, and it was just a matter of a
23  few days type deal before we did the job, you know,
24  but, obviously, I mean, he may have caught another
25  one. It was one of the first ones. I'll put it

Page 120

1   that way.
2   Q. And you were familiar with Mr. Taylor from
3   past work he had done for you?
4   A. Yes.
5   Q. Correct?
6   A. Yes.
7   Q. All right. And did you consider him to be,
8   you know, a good and knowledgeable flow-back hand?
9   A. I consider him one of the better ones there
10  was. I mean, he, you know, took -- you know, took
11  control and knew when to flow, you know, how to
12  adjust the chokes, you know, know what -- you know,
13  basically was well versed on flowing the wells back
14  and, you know, had drilled out plugs, you know, for
15  other people, I mean, had done a variety of things
16  other than just flow wells back.
17  Q. And did you have any problems with him in
18  the past about any kind of safety issues or taking
19  chances he shouldn't have or anything like that?
20  A. Not that I'm -- you know, was aware of. I
21  mean, you know, it's -- you know, Leland was always
22  able to -- you know, it was bauxite. I mean, you
23  know, he had a reputation that he could handle any
24  kind of sand coming back. He just knew how to, you
25  know, adjust the valves and handle the chokes, and

Page 121

1   that was his reputation. Everybody -- and he was,
2   you know, one of the best, I guess, at, you know,
3   handling any kind of, you know, abrasive action, I
4   guess, would be the best way to put it.
5   Q. And in Leland's deposition yesterday -- I
6   know you weren't there, but he was saying that David
7   Boone has flow-back hands and flow-back consultants.
8   What is the difference between those two?
9   A. Well, I don't know how David -- I mean,
10  I -- you know, there are certain guys, I guess, can
11  handle the drill-out and certain hands, you know --
12  you know, you would have to ask David exactly what
13  his terminology -- I think it's more or less an
14  experience level.
15      You know, I don't want to get, you know,
16  how David classifies his people, but, you know,
17  there will be guys that David will send out on a
18  drill-out, you know, and people he won't. I guess
19  it's more an experienced level.
20      I guess that -- when you say flow-back
21  consultant, I guess that would be, you know,
22  somebody like Leland that could do a flow back and a
23  drill-out both, where some of the guys are just
24  strictly flow back only.
25  Q. Okay. Well, I think Leland -- again, you

DEPOSITION OF JOE ANDERSON          APRIL 1, 2009

Page 174

1  been out there?
2     A.  Well, I know we logged it and I met the
3  surveyor out there on location.  You know, I can't
4  remember exactly how many times.  We had other wells
5  in the area.  I may have drove by there, but four to
6  five.  I mean, as far as operationally, the last
7  time I was there is when we logged the well.
8     Q.  And the flow line would have been assembled
9  at that point?
10    A.  No, it wasn't.
11    Q.  Did you ever see the flow line assembly?
12    A.  I never seen the flow line assembly.
13    Q.  Did anybody tell you how the flow line
14 assembly was set up?
15    A.  Yeah.  Phil did.
16    Q.  After it was --
17    A.  After it was installed.
18    Q.  Okay.  Did Mr. -- I think you mentioned
19 earlier there were some procedures that you had
20 either given Mr. Tate or discussed with him.  Am I
21 remembering that correctly?
22    A.  Yeah.  You know, the frac job, give him
23 the -- where to perforate at and then, you know, the
24 frac job.  I mean, Halliburton's deal is a real
25 thick deal.  You know, I just said frac per attached

Page 175

1  Halliburton procedure, and, you know, it's in an
2  e-mail and it was in an attachment in a -- I think
3  they put them in a Word document.
4     Q.  And this had -- this was on the second frac
5  job?
6     A.  On both stages.
7     Q.  Okay.  Was there any kind of flow-back
8  procedures, written flow-back procedures?
9     A.  No.
10    Q.  Were there just not any in this particular
11 case or there never is?
12    A.  I never -- when I had Leland, I didn't see
13 there was a need for it.
14    Q.  Did you have written flow-back procedures
15 for other flow-back hands other than Leland?
16    A.  Other than Leland, yeah, I would have them
17 written up when they obviously didn't have an
18 experienced person out there.
19    Q.  Any of those you kept?
20    A.  I would have to go and just -- you know, I
21 can't recollect.  I would just have to go through my
22 list of wells.
23    Q.  And so the reason you didn't have
24 particular flow-back procedures to follow on the
25 Trawick No. 3 is -- was because of Mr. Taylor's

Page 176

1  experience?
2     A.  That's right.
3     Q.  Any other reason?
4     A.  Not really.  I mean, like I say, I think I,
5  you know, made the request to have Leland out there
6  knowing I would be out of -- you know, out of -- you
7  know, out of the mix type deal, and I, you know,
8  specifically requested him on the drill-out so I
9  wouldn't have to worry about it because I, you know,
10 knew he could handle the job.
11    Q.  When you had this plug drill-out and flow
12 back, I didn't under -- prior to Mr. Taylor's
13 injury, did you -- did you guys always -- did Nadel
14 and Gussman always specify that you had to have more
15 than one flow-back line when you were doing plug
16 drill-out and flow back?
17    A.  Well, we've only done just a few.  I mean,
18 you know, like I say, we hadn't done any in years
19 until last -- you know, I guess it would be two
20 years, almost two years now, and the other two jobs
21 we had done in the previous 30 days were both two
22 lines, but before then, I can't recollect.
23        It had been years since we did that just
24 the fact that the kind of wells we drilled were just
25 single stage wells.  They weren't -- there wasn't a

Page 177

1  need to drill out the plug because I think the last
2  ones -- I would have to go back through from, you
3  know, dates, but, you know, four or five years
4  probably between plugs.
5     Q.  Tell me the name of those two wells again.
6     A.  The ones -- the ones that Leland and
7  Forrest was on?
8     Q.  Yes.
9     A.  The Eidson No. 2 and the Warner No. 2.
10    Q.  And when we say we have two lines, is that
11 the same thing as a manifold -- having a manifold,
12 or is that two different things?
13    A.  That's two different things, but it's --
14 it's the ability to have two different, you know,
15 valve -- two different lines, where if one line
16 plugs, you can -- you know, you don't have to, you
17 know, attempt to blow it out.  You can go ahead and
18 go down the other side and, you know, break it
19 loose, and instead of having pressure to try to blow
20 it out or something like that, you can, you know,
21 shut it in and flow on one side and clean out the
22 other side.
23    Q.  So --
24    A.  It gives you the ability to flow.  It gives
25 you the ability to flow either side is what I'm